Turner Constr. Co. v Nastasi & Assoc., Inc. (2020 NY Slip Op 08024)





Turner Constr. Co. v Nastasi & Assoc., Inc.


2020 NY Slip Op 08024


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.,
Barbara R. Kapnick
Troy K. Webber
Cynthia S. Kern
Anil C. Singh, JJ.


Index No. 652218/17 Appeal No. 12593 Case No. 2020-02117 

[*1]Turner Construction Company, Plaintiff-Respondent,
v
Nastasi & Associates, Inc., Defendant-Appellant.



Defendant appeals from an order, Supreme Court, New York County (Robert R. Reed, J.), entered March 3, 2020, which granted plaintiff's motion to dismiss defendant's counterclaims,




Spiro Harrison, New York (Meredith Sharoky Paley of counsel), for appellant.
Peckar & Abramson, P.C., New York (Alexander X. Saunders and Howard M. Rosen of counsel), for respondent.



Singh, J.


At issue on this appeal is whether defendant Nastasi & Associates, Inc.'s (Nastasi) counterclaims should be dismissed at the pleading stage of this action on the ground that they are untimely because they were not interposed within the one-year contractual limitation. We find that issues of fact are raised as to whether the contractual limitation period was reasonable. Under the circumstances of this case, the motion by Turner Construction Corp. (Turner) to dismiss the counterclaims interposed by Nastasi should be denied.
During 2012 and 2013, Nastasi entered into five substantially identical subcontracts with Turner to perform drywall installation, rough carpentry, and related construction work on five different Turner projects through New York City. Pursuant to the contracts, payments were subject to a provision, under "Payments in General," which states that "[t]he obligation of Turner to make a payment under this Agreement, whether a progress or final payment, or for extras or change orders or delays to the Work, is subject to the express condition precedent of payment therefor by the Owner." The contract further provides that final payment "shall be made only with funds received by Turner from the Owner, the Construction Lender, or the Owner's agent as final payment for work under the contract. Final payment to Turner by the owner shall be an express condition precedent that must occur before Turner shall be obligated to make final payment to the subcontractor." Provisions concerning change orders to the contract price are found at Article IX. However, payments for charge orders were subject to owner payment:
"Notwithstanding the foregoing, the Subcontractor [Nastasi] agrees that it shall not be entitled to nor claim any cost reimbursement, compensation, damages or extensions of time attributable to any changes, additions, and/or omissions directed by Turner except to the limited extent that Turner has actually recovered corresponding cost reimbursement, compensation . . . from the Owner under the Contract Documents for such changes, additions and/or omissions and then only to the extent of the amount, if any, which Turner on behalf of the Subcontractor, actually received from the Owner on account of such delay, obstruction, hindrance or interference."
The contracts contained an early termination provision giving Turner "the right at any time and for any reason, by written notice to the subcontractor, to terminate this agreement without cause and require the subcontractor to cease work hereunder." As for the payment procedure in the event Turner terminated the contract prior to completion, the agreement provided that "the subcontractor shall be entitled to payment pursuant to the terms of the Agreement only for work performed as of the date of termination, together with reasonable costs of demobilization, and other reasonable costs."
In the event of a dispute, the contracts contained a claim limitation period. Article XVIII [*2]provided: "All claims, suit or demands by Subcontractors as against Turner or Owner shall be brought within the earlier of one year following the subcontractor's achieving substantial completion for the subcontractor's work or within one year of Turner's notice of default in the event Turner has taken any action in accordance with Article XI, and subcontractor hereby agrees that all relevant statutes of limitations shall be deemed reduced to such time period, to the fullest extent permitted by law."
Sometime in April 2015, Nastasi communicated with Turner that they were awaiting payment for certain work they had completed. Turner responded, stating that it was "working on processing completed change orders so you can bill and get paid." On May 4, 2015, Turner issued notices of termination for all five contracts. Thereafter, Turner again stated that it would wire the funds it owed to Nastasi under the contract. When Turner failed to follow through on this promise, Nastasi issued a formal demand letter to Turner for payment.
From May 2015 until April 2017, the record reflects that Nastasi and Turner were in active settlement negotiations over Turner's nonpayment for the work Nastasi performed. During this time, Turner continued to aver that it would pay Nastasi for sums owed. However, settlement negotiations failed and on April 25, 2017, Turner commenced the instant action seeking damages in the amount of $4,777,310 for the additional costs of labor, material, and other damages incurred as a result of Nastasi's alleged breaches of contract.
On July 25, 2017, Nastasi answered, denying all material allegations in the complaint and setting forth affirmative defenses, including that "[p]laintiff's claims and causes of action should be reduced under the doctrines of set off and recoupment." On December 27, 2019, Nastasi served an amended answer asserting counterclaims for breach of contract and account stated for each of the five subcontracts.
Turner moved to dismiss the counterclaims on the basis that they were untimely, as they had not been made within one-year of the notices of termination, in accordance with the contract. Nastasi opposed, stating that in April 2015 it notified Turner that payment for millions of dollars in work was outstanding. Since then, it had continued, in good faith, to discuss the unpaid balance with Turner, who assured them that the outstanding sums would be paid.
Supreme Court granted Turner's motion, finding that the clause in the contract limiting claims to one year was unambiguous, and there was no condition precedent in dispute. Nastasi appeals.
Parties may contract for a shorter period to commence an action than set forth by statute, provided that the period is reasonable (see John J. Kassner & Co. v City of New York, 46 NY2d 544, 550-551 [1979]). However, if a contract imposes a condition precedent that cannot reasonably be met within the time frame of the limitations period under the available facts, the limitations [*3]period is unenforceable (see Country-Wide Ins. Co. v Preferred Trucking Servs. Corp., 22 NY3d 571, 577 [2014]). Furthermore, "[t]he circumstances, not the time, must be the determining factor" (D & S Restoration, Inc. v Wenger Constr. Co., 160 AD3d 924, 926 [2d Dept 2018], citing Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d 511, 519 [2014]).
The relevant question when deciding whether a limitations period is enforceable is whether and when the damages were objectively ascertainable(CAB Assoc. v City of New York, 32 AD3d 229, 232 [1st Dept 2006]). Acontractual limitations period is unenforceable without a concrete determination of damages accrual(AWI Sec. & Investigations, Inc. v Whitestone Constr. Corp., 164 AD3d 43 [1st Dept 2018]); D & S Restoration, 160 AD3d at 924).
Here, the provisions setting a one-year limitation period for claims arising out of the contracts between Turner and Nastasi are reasonable on their face. However, the contracts also provide that payments by the owner are conditions precedent to any sums owed by Turner to Nastasi. As observed in D&S Restoration, it was neither fair nor reasonable to impose such a condition precedent, which was not within Nastasi's control, but had the capability of nullifying its claim (D&S Restoration, 160 AD3d at 926).
Turner argues that there is no evidence that it denied the claim based upon the nonpayment of the owner, suggesting that the conflict in the provisions is only relevant if its underlying basis for nonpayment was failure by the owner to perform. This statement is not only self-serving, it is also irrelevant as the intent of the owner should not govern the interplay of the two provisions. Such a holding will unreasonably permit a party to choose to stay silent on the issue of owner payment unless it suited them, and unilaterally set the accrual date for the claim.
The record is clear that Turner represented that payment was forthcoming to Nastasi. Specifically, in an April 2015 email, Turner stated that it was "working on processing completed change orders so you can bill and get paid." Additionally, Nastasi participated in settlement negotiations in good faith for over two years with Turner. Not once did Turner indicate that it would not pay Nastasi for the work it performed; to the contrary, it averred it was working on getting things sorted out so that Nastasi would get paid. At the pleading stage, we should not be making factual findings as to why Turner terminated Nastasi. In any event, the record contradicts the claimed basis on which Turner's action is brought.
At oral argument, Turner's counsel acknowledged payment was made by the owner but refused to state when Turner was actually paid by the owner. The record contains no evidence to determine when the owners paid Turner, when the claims accrued, and whether the claims accrued before they were barred under the limitations provision. Given the foregoing, Turner failed to make a showing that the contractual limitation [*4]was reasonable as applied, and, moreover, such factual issues cannot be decided at the pleading stage (see Executive Plaza, 22 NY3d at 518-519; Greystone Bldg. & Dev. Corp. v Makro Gen. Contrs., Inc., 181 AD3d 468 [1st Dept 2020]; D & S Restoration, 160 AD3d at 926).
We have considered Turner's remaining arguments and find them unavailing.
Accordingly, the order of the Supreme Court, New York County (Robert R. Reed, J.), entered March 3, 2020, which granted Turner's motion to dismiss Nastasi's counterclaims, should be reversed, on the law, with costs, and the motion denied.
Order, Supreme Court, New York County (Robert R. Reed, J.), entered March 3, 2020, reversed, on the law, and the motion denied, with costs.
Opinion by Singh, J. All concur.
Friedman, J.P., Kapnick, Webber, Kern, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020